IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BRUCE W. PEARSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:22-cv-377 (RDA/IDD) |
| ) | |
| PRINCE WILLIAM COUNTY SCHOOL ) | |
| BOARD, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Prince William County School Board's ("Defendant") Motion to Dismiss (the "Motion") the Complaint filed by Plaintiff Bruce Pearson ("Plaintiff"). Dkt. 4. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the Motion together with Defendant's Memorandum in Support (Dkt. 5), Plaintiff's Oppositions (Dkt. Nos. 10; 11), and Defendant's Reply (Dkt. 12), this Court GRANTS Defendant's Motion for the reasons that follow.

I. BACKGROUND[1]

A. Factual Background

Bruce Pearson is an African-American man. Dkt. 1 at 2, ¶ 11. He was employed by Defendant as a high school teacher at Freedom High School ("FHS") from November 2005 until he was dismissed on September 9, 2019. *Id.* at 3, ¶¶ 12-13.

---

[1] For purposes of considering the Motion, the Court accepts all facts contained within Plaintiff's Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

On June 10, 2019, Plaintiff filed an E.E.O.C. charge against Defendant, specifically Principal Inez Bryant and other administrators. Dkt. 1-1, at 4, ¶ 7.[2] The E.E.O.C. issued a Notice of Rights on September 9, 2019. *Id.* at 4, ¶ 8. Plaintiff then filed a complaint in this Court on December 6, 2019. *Id.* Judgment was entered in favor of Defendant on March 25, 2021, and was subsequently affirmed by the Fourth Circuit on September 17, 2021. *Id.*

After Plaintiff was terminated by Defendant, he applied for various administrative, supervisory, and teaching roles. *Id.* at 4, ¶ 9. He interviewed with Fairfax County Public Schools ("FCPS") in 2020 and 2021. *Id.* at 4, ¶ 10. Defendant claims that his interview with South County High School on June 22, 2021, appeared to be "very promising" and that the interviewers were "extremely impressed." *Id.* As a result, the Assistant Principal at South County High told Plaintiff that South County wanted to "move forward" with hiring him and asked him to provide two references. *Id.* Plaintiff provided two references: his former direct administrator at FHS, Assistant Principal Christi Feemster; and his former colleague in the Career and Technical Education department at FHS, Gina Consumano. *Id.* at 4, ¶ 11.

Apparently, South County's "efforts to contact Ms. Feemster and Ms. Consumano were to no avail." *Id.* at 4, ¶ 12.[3] South County did, however, receive a "good recommendation" for

---

[2] Docket 1-1 is a "Statement of Harm" that was attached to Plaintiff's November 2, 2021 E.E.O.C. Charge of Discrimination. Dkt. 1-1 at 1 (incorporating Statement of Harm). Because the Statement of Harm is part of the E.E.O.C. charge, it is a document that is "integral to the [C]omplaint" and the Court can consider it in ruling on Defendant's Motion to Dismiss since there is no dispute as to its authenticity. *Tucker v. Sch. Bd. of the City of Va. Beach*, No. 2:13-cv-530, 2014 WL 5529723, at *8 n.4 (E.D. Va. Oct. 31, 2014) (quoting *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)).

[3] Plaintiff speculates about various reasons why Ms. Feemster and Ms. Consumano were unreachable. *See* Dkt. 1-1 at 4 ¶ 12-13 (speculating that "administrators and former co-workers are reluctant to provide a reference for fear of … reprisals"). Those are not factual allegations, but speculation that the Court need not accept as true. *See Coleman v. Pentagon Fed. Credit Union*,

Plaintiff from a "new Assistant Principal" at FHS, Lakisha Brown. *Id.* at 5, ¶ 14. South County was ultimately unable to reach Ms. Feemster and Ms. Consumano, despite leaving messages, emails, and other forms of contact. *Id.* at 5, ¶ 15.

Nevertheless, South County still offered Plaintiff a job based on Ms. Brown's recommendation alone. *Id.* South County told Plaintiff that he would have to "respond to an email offering the position" to accept its job offer. *Id.* at 5, ¶ 16. It then sent Plaintiff an email asking if he would accept the position and he responded by saying "Yes and thanks for the opportunity." *Id.* at 5, ¶ 17. South County subsequently emailed Plaintiff and told him that it could "not confirm the references [he] provided" and that as a result, it could not proceed with his employment. *Id.* at 6, ¶ 19. Plaintiff was taken aback by South County's latest response because he thought he had accepted the offer and asked South County to contact his references. *Id.* at 6, ¶ 20. He never heard back from South County. *Id.*

Plaintiff speculates about what may have caused South County to reverse its decision to hire him. He believes that he received a "conditional job offer subject to a reference c heck." *Id.* at 6 ¶ 21. When South County called Ms. Feemster, his listed reference, Plaintiff asserts that she "refused to provide a reference[,] perhaps due to fear of retaliation." *Id.* He calls it "implausible" that Ms. Feemster did not learn about the reference request and "even more implausible" that South County could not contact her. *Id.*

### B. Procedural Background

Plaintiff filed suit in this Court on April 6, 2022. Dkt. 1. Defendant moved to dismiss the Complaint on July 25, 2022. Dkt. 4. Plaintiff opposed the Motion to Dismiss on August 2, 2022.

---

No. 17-cv-18, 2017 WL 1044693, at *6 (E.D. Va. Mar. 17, 2017) ("Plaintiff's speculation, unsupported by any factual allegations, is not enough to survive a motion to dismiss.").

Dkt. Nos. 10; 11.  Defendant replied in support of its Motion to Dismiss on August 8, 2022.  Dkt. 12.

## II. STANDARD OF REVIEW

On a Rule 12(b)(6) motion, the Court considers the sufficiency of a complaint. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011).  "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal is appropriate only if the well-pleaded facts in the complaint "state a claim that is plausible on its face.'"  *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of [his] claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'"  *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)).  Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted.  *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.").  And "[g]enerally, courts may not look beyond the four corners of the complaint in

4

evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508).

### III. ANALYSIS

Plaintiff brings an array of claims. First, he brings a race discrimination claims under Title VII and 42 U.S.C. § 1981. Second, he asserts retaliation claims under Title VII and 42 U.S.C. § 1981. Finally, he pleads several claims under state law.[4]

The Court must clarify that it is not evaluating any allegations that relate to Plaintiff's claims of racial discrimination or retaliation that occurred when he was employed by Defendant. Plaintiff brought those claims in a separate suit against the same Defendant and final judgment was entered against him and in favor of Defendant two years ago. *See generally Pearson v. Prince William Cnty. Sch. Bd.*, No. 1:19-cv-1543, 2021 WL 1150068 (E.D. Va. Mar. 25, 2021) (Brinkema, J.,) (opinion granting Defendant's Motion for Summary Judgment). To the extent Plaintiff brings any claims that are duplicative of his claims in the original suit, they are barred by *res judicata*. *Pittston Co. v. United States*, 199 F.3d 690, 704 (4th Cir. 1994).

---

[4] In this most recent Complaint, Plaintiff does not explicitly plead that he is pursuing a § 1981 race discrimination claim or any claims under state law; he only refers to those legal theories in his "Statement of Harm." Dkt. 1-1 at 3, ¶¶ 3, 37-38. As stated *supra*, the Court can properly consider the "Statement of Harm" as a document integral to the Complaint. And this Court must liberally construe the *pro se* Plaintiff's Complaint: so long as Defendant has "fair notice of what … the claim is and the grounds upon which it rests[,]" Plaintiff has properly pleaded his claims under Federal Rule of Civil Procedure 8(a)(2). *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting *Twombley*, 550 U.S. 544, 555 (2007)). In this case, Defendant is indeed aware of Plaintiff's § 1981 race discrimination claim as well as his state-law claims, as it addressed those claims in its Motion to Dismiss. Dkt. 5 at 5 n.2, 18-20. Accordingly, the Court considers the merits of those claims.

Plaintiff also makes passing reference to a violation of 18 U.S.C. § 242. However, that statute is a criminal statute that does not provide a private right of action, and so the Court does not consider such a claim. *Allen v. Gardens*, No. 3:21-cv-544, 2021 WL 4355329, at *2 (E.D. Va. Sep. 16, 2021); *Bey v. Davis*, No. 4:15-cv-87, 2015 WL 13039574, at *1 (E.D. Va. Sep. 8, 2015).

A.  Plaintiff's Race Discrimination Claims

1. Title VII Claim

Plaintiff first brings a Title VII racial discrimination claim. He claims that he was racially discriminated against for filing an EEOC charge and lawsuit. Dkt. 1 ¶ 19. While it is somewhat unclear what specific discriminatory actions Plaintiff alleges Defendant engaged in, as stated *supra*, the Court evaluates Plaintiff's claim of post-employment discrimination, since any claim of discrimination during his employment is barred by *res judicata*.

Under the plain language of Title VII, Plaintiff cannot bring a claim for post-employment discrimination. 42 U.S.C. § 2000e–2(a) reads:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

Section 2000e–2(a)(1) explicitly applies to either the hiring or firing of an employee, as well as the period during which an employee works for a company. In this case, Plaintiff was already employed and terminated by Defendant and has litigated his discrimination claims related to his employment and termination. Thus, 2000e–2(a)(1) does not apply to the facts Plaintiff has alleged here. Similarly, 2000e–2(a)(2) applies to an employers' actions in evaluating prospective and current employees. In this case, Plaintiff does not allege that he applied for employment with Defendant, and his discrimination claims stemming from his employment with Defendant have already been litigated. So 2000e–2(a)(2) does not apply to Plaintiff's claims, either.

6

Case law confirms that Plaintiff cannot proceed with a Title VII discrimination claim premised on post-employment conduct. While the antiretaliation provision of Title VII applies to post-employment conduct, courts have consistently held that alleged post-employment actions cannot serve as a predicate for a Title VII discrimination claim. *See Meadows v. Blue Ridge Comm. College*, No. 1:19-cv-251, 2020 WL 2761037, at *6 (W.D.N.C. May 5, 2020) ("[Discrimination claims may not be supported by acts of post-employment discrimination."); *Colahar v. Christmas*, No. DKC 11-3389, 2012 WL 6213751, at *3 n.5 (D. Md. Dec. 12, 2012) ("The allegations regarding Enterprise's post-termination efforts to interfere with [plaintiff's] unemployment benefits claim cannot serve as the basis for a Title VII discrimination claim.").[5] The Fourth Circuit has indicated the same. *See Robinson v. Shell Oil Co.*, 70 F.3d 325, 331 (4th Cir. 1995) (noting that "unlawful employment practice" in 42 U.S.C. 2000e–2(a)(1) covers "discrimination with respect to certain aspects of employment" and thus "does not redress discriminatory practices *after* the employment relationship has terminated") *rev'd on other grounds*, 519 U.S. 337 (1997).

Because both the plain language of the statute and case law make clear that post-employment practices cannot serve as the basis for a Title VII claim, Plaintiff's Title VII racial discrimination claim must be dismissed.

---

[5] *See also Sanford v. Main Street Baptist Church Manor, Inc.*, 327 F. App'x. 587, 597 (6th Cir. 2009) (holding that a post-employment decision was not an adverse action under Title VII); *Bryant v. Covina-Valley Unified Sch. Dist.*, No. CV 17-1274, 2018 WL 6016924, at *3 (C.D. Cal. Jan. 10, 2018) ("[T]he Supreme Court has held that …Title VII's antidiscrimination provisions are limited to 'discriminatory actions that affect the terms and conditions of employment' and are thus not applicable to post-employment discrimination …." (quoting *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 64 (2006)).

2. Section 1981 Claim

Plaintiff also appears to allege a race discrimination claim pursuant to 42 U.S.C. § 1981. In relevant part, § 1981 provides that "[a]ll persons within … the United States shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "Make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). In short, § 1981 "prohibits racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168 (1976).

While Defendant is correct to point out that § 1981 and Title VII discrimination claims are evaluated under the same standard, Dkt. 5 at 5 n.2, that does not end the analysis. The fact that the standard is the same under both statutes merely means that what Plaintiff must plead to survive a motion to dismiss is the same for both the Title VII and § 1981 discrimination claims. However, the threshold question is whether the *scope* of those two provisions is the same. A plain reading of Title VII as well as case law interpreting the statute confirms that it does not extend to post-employment discrimination; the Court must determine whether the same is true for § 1981.

The plain language of § 1981 does not limit its application to employer actions in hiring, employing, and firing employees. Instead, it speaks to the ability of "all persons within the jurisdiction of the United States … to make and enforce contracts." 42 U.S.C. § 1981(a). And "make and enforce contracts includes the making, performance and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42

8

U.S.C. § 1981(b). That scope is quite broad; notably, it does not only apply to employers. Rather, the statute broadly covers the making and enforcement of contracts.

As a result, courts have applied § 1981 to non-employers. The Fourth Circuit has held that third parties can be liable under § 1981 if the plaintiff can "show that the defendant both possessed sufficient authority to significantly interfere with the individual's ability to obtain contracts with third parties, and that the defendant actually exercised that authority to the plaintiff's detriment." *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 351 (4th Cir. 2013) (cleaned up). Accordingly, district courts have analyzed discrimination claims brought by a plaintiff against a third party when the plaintiff claims the third party interfered with their ability to obtain a contract. *See, e.g.*, *Carter v. Dominion Energy, Inc.*, 529 F. Supp. 3d 525, 541-42 (W.D. Va. 2021) (addressing § 1981 claim brought against third-party); *Williams v. Lipscomb*, No. 7:17-cv-447, 2018 WL 3672752, at *2-3 (W.D. Va. Aug. 2 2018) (same).

Here, reading the allegations in a light most favorable to Plaintiff (as the Court must), the Complaint sufficiently sets forth facts rendering § 1981 applicable to Defendant in this case. Plaintiff has alleged that he had a prospective job opportunity with South County High School that was contingent upon two references. Dkt. 1-1 at 2, ¶ 10. That, when combined with the fact that his job offer was withdrawn due to South County's inability to contact his references, makes it reasonable to at least infer that had Plaintiff's references provided good recommendations, he would have received an offer. *Id.* at 3, ¶ 19. This means that Defendant had "sufficient authority to significantly interfere with [Defendant's] ability to obtain [a] contract[]" with South County: its reference (or the lack thereof) was determinative of Plaintiff's ability to obtain a contract with South County High. *Painter's Mill Grille,* 716 F.3d at 351. Thus, because Plaintiff has alleged

9

that Defendant failed to provide the requested reference, he has also alleged that Defendant "interfered with [his] ability to obtain" employment with South County High.

Having determined that § 1981 applies in this case, the Court must now examine whether the Complaint plausibly states a violation of § 1981 above a speculative level. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020).[6] "Or, as the Fourth Circuit recently put it … 'to survive a motion to dismiss, a plaintiff must allege facts that, if accepted as true, allow the court to draw a reasonable inference as to [the] legal requirements' for a § 1981 claim, namely that [D]efendant intended to discriminate on the basis of race, that the discrimination interfered in a contract, and that the interference would not have happened but for the plaintiff's race." *Brown v. Harford Bank*, No. ELH-21-0096, 2022 WL 657564, at *11 (D. Md. Mar. 4, 2022) (quoting *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022)) (cleaned up).

Because Plaintiff brings his § 1981 claim against a state actor, he must also meet the requirements of § 1983. Section 1981 does not provide a private right of action against a state actor. This means that to vindicate his rights under § 1981, Plaintiff must pursue a remedy under § 1983, which is the "exclusive federal remedy for violation of the rights guaranteed in § 1981." *Dennis v. Cnty. Of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)).[7] Consistent with the requirement that the Court liberally construe the *pro se* Plaintiff's Complaint, the Court evaluates Plaintiff's claim pursuant to § 1983.

---

[6] Discrimination claims for Title VII and § 1981 are evaluated under the same framework. *Gairola v. Va. Dep't of Gen. Servs.*, 1281, 1285 (4th Cir. 1985).

[7] This Court acknowledges that the case law in the Fourth Circuit on this question is "somewhat murk[y][.]" *James v. Univ. Of Md., Univ. College*, No. PJM 12-2830, 2013 WL 3863943, at *2 n.1 (D. Md. July 13, 2013). However, at least six circuits (including the Fourth) have held that § 1981 does not contain an implied cause of action against a state actor. *See McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012); *McGovern v. City of Phil.*, 554 F.3d 114, 118 (3rd Cir. 2009); *Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006); *Oden v. Oktibbeha Cnty.*, 246 F.3d 459, 463-64 (5th Cir. 2001), *Butts v. Volusia Cty.*, 222

To state a § 1983 discrimination claim, Plaintiff must first adequately plead a § 1981 claim, which is the same as pleading a Title VII employment discrimination claim. *Satterfield*, 2017 WL 11449568, at *11. While at this stage Plaintiff "need not plead a prima facie case of discrimination[,]" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002), he must still "allege facts to satisfy the elements of a cause of action created by [the] statute." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). In this case, that means that Plaintiff must allege facts that show that Defendant did not give a job reference to South County High because of his race.

The Complaint is devoid of any facts that show, or permit a reasonable inference that, Defendant failed to provide a reference to South County High because of Plaintiff's race. While Plaintiff's complaint is riddled with speculation, even that speculation focuses on the purported *retaliatory* motive that Defendant had. *See, e.g.*, Dkt. 1-1 ¶¶ 12, 21-25, 28 (describing the alleged retaliatory motives). There are simply no plausible allegations in the Complaint that connect Defendant's failure to give a job reference to South County High to Plaintiff's race. As a result, Plaintiff's Complaint does not sufficiently allege a § 1981 claim.

Plaintiff has also not pleaded sufficient facts to meet the additional requirement that § 1983 imposes: that Defendant violated his rights as a result of a "policy or custom." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Plaintiff has put "forward no facts regarding

---

F.3d 891, 894 (11th Cir. 2000); *but see Fed'n of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996) (holding that § 1981 provides a cause of action against a state actor). Numerous district courts have followed that reasoning in evaluating § 1981 claims against state actors. *See, e.g.*, *Satterfield v. City of Chesapeake*, No. 2:16-cv-665, 2017 WL 11449568, at *11 (E.D. Va. Aug. 31, 2017) ("When a plaintiff alleges a Section 1981 claim against a municipality, such claim may only be brought pursuant to 42 U.S.C. § 1983, which provides the "exclusive federal remedy for violation of the rights guaranteed in § 1981"); *Jarvis v. City of Alexandria*, No. 1:17-cv-378, 2017 WL 2537038, at *3 (E.D. Va. June 12, 2017) ("[B]ecause the named defendants are state actors, Plaintiff cannot recover under Section 1981.").

[Defendant's] policies, customs, practices, policymaking decisions, or any other action that gives way to municipal liability." *Gholson v. Benham*, No. 3:14-cv-622, 2015 WL 2403594, at *6 (E.D. Va. May 19, 2015). There is nothing in Plaintiff's Complaint other than allegations about his own situation. As a result, his § 1981 discrimination fails for that reason, as well.

B. Plaintiff's Retaliation Claims

Plaintiff also brings retaliation claims under Title VII and § 1981. He appears to claim that Defendant retaliated against him for filing his original E.E.O.C. complaint in September of 2019 when the two references he provided from Prince William County failed to provide a reference to South County High.

To state a Title VII retaliation claim, Plaintiff must sufficiently allege "(1) that [he] engaged in a protected activity, (2) that [Defendant] took a materially adverse action against [him], and (3) [that] there is a causal connection between the protected activity and the adverse action." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 195 (4th Cir. 2019). The elements for a § 1981 retaliation are the same. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015). Defendant does not appear to contest that Plaintiff engaged in a protected activity when he filed his E.E.O.C. charge in June 2019. Dkt. 5 at 14.

Plaintiff has also adequately pleaded that Defendant took a materially adverse action against him, which Defendant appears to concede. Defendant acknowledges that the E.E.O.C. has indicated that "refusing to provide a job reference" can be an activity "which may constitute an adverse action for retaliation. *Id.* (quoting E.E.O.C. Enforcement Guidance on Retaliation and Related Issues § 8–II(A)(3)). Case law confirms as much. *See Hall v. Charlotte Mecklenburg Schs.*, No. 3:13-cv-259, 2014 WL 2586889, at *10 (W.D.N.C. June 10, 2014) ("In the context of a Title VII retaliation claim … refusing to provide a job reference ... [is an activity] which may

12

constitute an adverse action." (cleaned up)); *E.E.O.C. v. L.B. Foster Co.*, 123 F.3d 746, 754 (3d Cir. 1997) (refusal to provide a reference was an adverse action).

Plaintiff still must show a causal link between his protected activity and the adverse action he suffered; and the causation standard is the same for Title VII and § 1981.  In *Boyer-Liberto*, the Fourth Circuit posited that the causation standard might differ between the two statutes. *See* 786 F.3d at 281 n.5 ("We observe that, although the elements of prima facie Title VII and § 1981 retaliation claims are identical, the causation standard for a Title VII claim may differ from that for a § 1981 claim …."). However, the Supreme Court recently clarified that § 1981 discrimination plaintiffs must show but-for causation, just as Title VII plaintiffs must. *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020); *see Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (Title VII retaliation plaintiffs must show but-for causation). That causation standard has since been extended to § 1981 retaliation plaintiffs. *See Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 172-73 (4th Cir. 2020) ("[T]o state a § 1981 retaliation claim, a plaintiff must allege facts rendering it plausible that, but for her participation in protected activity, she would not have suffered a materially adverse action.").

As a threshold matter, Plaintiff has not even pleaded that the two administrators from whom he sought references *knew* about his protected activity; that alone is enough for his retaliation claim to fail.  "Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish" the causation element. *Wright v. Sw. Airlines*, 319 F. App'x 232, 234 (4th Cir. 2009) (cleaned up).

Nevertheless, there are two principal ways to demostrate the causal link necessary for Plaintiff to succeed on his retaliation claim. First, Plaintiff could present direct evidence that

13

"suggests that the adverse employment action occurred because of the protected activity." *Johnson v. United Parcel Service, Inc.*, 839 F. App'x 781, 784 (4th Cir. 2021) (citing *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007)). Second, Plaintiff could show that "the adverse act bears sufficient temporal proximity to the protected activity." *Id.* (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). However, a lack of temporal proximity does not mean that Plaintiff cannot establish the requisite causal link. *See Smith v. CSRA*, 12 F. 4th 396, 417 (4th Cir. 2021) ("The existence of relevant facts *alone* … may be used to establish a causal connection between the protected activity and the adverse action."). For example, Plaintiff could submit evidence of "regular acts showing animus or antagonism, coupled with valid reasons why the adverse action was not taken immediately." *Hart v. Hanover Cnty. Sch. Bd.*, No. 3:10-cv-794, 2013 WL 1867388, at *5 (E.D. Va. May 2, 2013).

Plaintiff pleads no facts showing direct evidence of a causal link. There is plenty of *speculation* on Plaintiff's part explaining why Defendant failed to provide a job reference—but no substantive factual allegations. Plaintiff's own Complaint indicates that he does not have any direct evidence of a link between his protected activity and the lack of a job reference. *See, e.g.*, Dkt. 1-1 at 2, ¶ 12 ("*Apparently*, administrators and former co-workers are reluctant to provide a reference for fear of PWCSB reprisals and give former employees who filed discrimination complaints the cold shoulder."); *id.* at 4, ¶ 21 ("[M]y former direct administrator, Ms. Feemster, refused to provide a reference *perhaps* due to fear of retaliation."). There are no factual allegations connecting his protected activity to the adverse action, let alone "regular acts showing animus or antagonism." *Hart*, 2013 WL 1867388 at *5.

Plaintiff also cannot rely on temporal proximity to provide the causal link he needs. Plaintiff filed his EEOC charge on June 10, 2019 and filed suit in this Court in the prior action on

14

September 9, 2019. Dkt. 1-1 at 2, ¶¶ 7-8.[8] At the very earliest, the "adverse action" took place shortly after June 22, 2021, which was the date of Plaintiff's interview with South County High. *Id.* at 2, ¶ 10. That means that over a year and a half passed between Plaintiff's protected activity and the adverse action he experienced. Relevant precedent instructs that amount of time is insufficient to provide the temporal proximity supporting a causal link. *See Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012) ("[W]e have held that a three-or four month lapse between the protected activities and [the adverse action] was 'too long to establish a causal connection by temporal proximity alone'" (quoting *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006)); *Adams v. Dep't of Def.*, No. 1:16-cv-1468, 2017 WL 6699484, at *5 (E.D. Va. Sep. 29, 2017) (almost five month separation between adverse action and protected activity was "too great to establish a causal connection in itself").

---

[8] Determining what aspects of *litigating* an E.E.O.C. claim constitute "protected activity" is somewhat of a "legal quagmire." *Robinson v. Affinia Grp., Inc.*, 815 F. Supp. 2d 935, 942 (W.D.N.C. 2011). Some courts use the end date of a litigation as the "trigger date" for starting the clock on temporal proximity. *See Hart*, 2011 WL 652524, at *3 (date of settlement was start date for determining temporal proximity). But it is unclear whether the resolution of an *appeal* would be the end date or whether the entry of judgment at the district level would serve as the end date. It also seems nonsensical that, in this case, the date of the *district court's* summary judgment opinion would start the clock on "temporal proximity" rather than the day that Plaintiff filed his last pleading vis-à-vis that summary judgment opinion. That may be why many courts only consider the *initiation* of litigation to be protected activity, not all aspects of litigating an E.E.O.C. claim. *See McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir. 1991) (bringing lawsuit was a protected activity); *Monk v. Stuart M. Perry*, No. 5:07-cv-20, 2008 WL 2901347, at *2 (W.D. Va. July 18, 2008) (filing lawsuit in federal court a protected activity); *Battle v. Master Security Co.*, 298 F. Supp. 3d 250, 252 (D.D.C. 2018) (protected activities include "the filing of EEOC complaints and the *initiation* of litigation"). In any event, the Court is not aware of any case law that demands that it consider the district court's summary judgment opinion in the prior litigation or any appeal-related filings as "protected activity" for purposes of examining temporal proximity.

C.  Plaintiff's State-Law Claims

Plaintiff also makes reference to several Virginia statutes that he believes provide relief. He cites Va. Code Ann. § 40.1-27 (preventing employment by others of former employee) and Va. Code Ann. § 8.01-46.1 (disclosure of employment-related information; presumptions; causes of action; definitions). Dkt. 1-1 at 6, ¶¶ 37-38. He also appears to bring an "interference with prospective contract claim." *Id.* ¶ 36.

Plaintiff cannot maintain a claim under Va. Code Ann. § 40.1-27. First, there is no private right of action under that statute. *Henderson v. Fairfax-Falls Church Comm. Serv. Bd.*, No. 1:18-cv-825, 2018 WL 6037522, at *5 (E.D. Va. Nov. 15, 2018) *aff'd* 771 F. App'x 205 (mem) (4th Cir. 2019). Second, Defendant is subject to sovereign immunity because it is a political subdivision of the Commonwealth of Virginia. *Mann v. Cnty. Bd. of Arlington Cnty.*, 199 Va. 169, 174 (1957). Because there is "no constitutional or statutory waiver by the Commonwealth of immunity for this alleged statutory violation," Defendant is entitled to sovereign immunity even if Plaintiff had a private right of action. *Henderson*, 2018 WL 6037522, at *2; *see also* Va. Code Ann. § 40.1-2.1 ("The provisions of this title and any rules and regulations promulgated pursuant thereto shall not apply to the Commonwealth or any of its agencies, institutions, or political subdivisions, or any public body, unless, and to the extent that, coverage is extended by specific regulation of the Commissioner or the Board.").

Nor can Plaintiff's claim pursuant to Va. Code Ann. § 8.01-46.1 survive Defendant's Motion to Dismiss. That provision explicitly applies to an employer who "*furnishes* information." Va. Code Ann. § 8.01-46.1A. In this regard, an employer is liable when it discloses information knowing that it was false, with reckless disregard for its falsity, or with the intent to deliberately mislead. *Id.* However, the gravamen of Plaintiff's claim is the inverse; that Defendant *did not*

16

disclose certain information, not that it disclosed false information.  As such, this statute does not apply to the facts that Plaintiff has alleged in his Complaint.

Plaintiff also appears to bring an "interference with prospective contract" claim.  Dkt. 1-1 at 6, ¶ 36.  In Virginia, there are two separate torts that could be covered by that claim: 1) the tort of interference with contractual relations, *Chaves v. Johnson*, 230 Va. 112, 120-23 (1985), and 2) the tort of interference with a prospective economic advantage, *Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.*, 254 Va. 408, 413-14 (1997).  For purposes of this motion to dismiss, the Court assumes Plaintiff brings both claims, which "involve several common elements."  *Masco Contractor Servs. E. Inc. v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003).

To adequately claim tortious interference with contractual relations, Plaintiff must adequately plead: "1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Chaves*, 230 Va. at 120.  This means that Plaintiff must plead that Defendant had "knowledge of" his opportunity with South County High and "inten[ded] to disturb" that opportunity.  *Id.* at 120-21.

Plaintiff has not adequately pleaded such a claim.  The fact that one of Defendant's employees, Lakisha Brown, provided a good recommendation undermines the theory of Plaintiff's cause of action.  Dkt. 1-1 at 5, ¶ 14.  Since one of Defendant's employees *did* provide a good recommendation to South County High, it supports the premise that Defendant did not intend to interfere with Plaintiff's prospective opportunity.  Moreover, there are no other factual allegations in the complaint that show or create a reasonable inference that Defendant intended to disturb

17

Plaintiff's opportunity. While there is plenty of speculation, there are no facts that lead to such a conclusion.

To survive a motion to dismiss on his claim of tortious interference with a prospective economic advantage, Plaintiff's Complaint must "(1) demonstrate the existence of a business relationship or expectancy, with a probability of future economic benefit; (2) prove knowledge of the relationship or expectancy; (3) show that it was reasonably certain that absent intentional misconduct, the claimant would have continued in the relationship or realized the expectancy; and (4) show that it suffered damages from the interference." *Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 213 (4th Cir. 2001). Additionally, Plaintiff must "demonstrate that the [D]fendant employed 'improper methods.'" *Id.* at 214 (citing *Maximus*, 254 Va. at 493). As stated above, Plaintiff has not pleaded that Defendant intentionally interfered with his prospective economic opportunity.

Plaintiff has also not pleaded that Defendant employed "improper methods." There are various types of interference that are "improper," including "egregious examples" like acts "that are illegal or independently tortious" or "violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of insider or confidential information, or breach of a fiduciary relationship." *Commerce Funding Corp.*, 249 F.3d at 214 (quoting *Duggin v. Adams*, 234 Va. 221, 360 (1987)) (cleaned up). "Improper methods" could also be less egregious, such as "violations of an established standard of a trade or profession ..., unethical conduct ..., sharp dealing, overreaching, or unfair competition." *Id.* All that Plaintiff has alleged here is the failure to give two references. That certainly does not rise to the level of "improper methods" that the Virginia Supreme Court has identified. Indeed, even accepting Plaintiff's conclusory allegations as true, all he has alleged is

"ill will" on Defendant's part, which is not sufficient for Plaintiff to meet his burden. *See Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 559-60 (2011) (declining to include "actions solely motivated by spite, ill will, and malice" as "improper methods").

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 4) is GRANTED.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Memorandum Opinion and Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to Plaintiff's last address on file and to close this civil action.

It is SO ORDERED.

Alexandria, Virginia
March 14, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge